## DANFORTH v. EGAN.

The right of a court to disbar an attorney, who is an officer of the court, is as much the law of the land, and of as much dignity as such, as any law in the Constitution or statutes. It is not dependent on

either the Constitution or statutes for its existence, but exists fully in all courts of record, unless expressly restricted or taken away by legislation.

The effect of "disbarment" of an attorney is to deprive him of every privilege to which his license had entitled him, not only his privileges in the court making the order of disbarment, but also his privileges in all courts.

The fact that a disbarred attorney has been subsequently elected to the office of state's attorney does not authorize him to practice in the courts of the state.

A disbarred attorney, subsequently elected state's attorney, is not qualified for the office, since his action in allowing his name to go on the ballot and remain there, knowing that he could not perform the duties of the office, is a fraud on the people.

Where a disbarred attorney is elected to the office of state's attorney, and is disqualified because unable to perform the duties of the office, the fact that he might perform the duties of the office by deputy does not qualify him, as he must discharge the duties of his office himself.

The acceptance of every office is upon an implied contract that the acceptor will perform its duties with integrity, diligence, and skill.

Where, by the laws of the state, the duties of a state's attorney consist chiefly in appearing in the courts of the state, a disbarred attorney elected to the office cannot qualify therefor.

The word "attorney," when used in connection with the proceedings of courts and the authority to conduct business in them, as well as when employed in a general sense as to the transaction of business usually and almost necessarily confided to members of the legal profession, has a fixed and universal signification, and has reference to a class of persons who are by license made officers of the courts, and empowered to appear, prosecute, and defend, and upon whom peculiar duties, responsibilities, and liabilities are devolved by law in consequence.

Pol. Code, § 927½, provides that a state's attorney must be a person duly admitted to practice as an attorney in some court of record in the state. The Constitution was enacted subsequent to the passage of the statute, and provided that the state's attorney must be learned in the law. **Held** that, by the use of the word "attorney" the framers of the Constitution meant a duly licensed attorney, and hence a disbarred attorney was not qualified to hold office.

Where an attorney has been disbarred for violation of legal ethics, which is one of the branches required by Pol. Code, § 686, to be considered in passing upon the qualifications of one seeking admission to the bar, he is not "learned in the law" within the constitutional provision requiring that a state's attorney shall be learned in the law, since it will be presumed that the violation occurred through ignorance, and not through willfulness.

The Supreme Court will take judicial notice of its own decision disbarring an attorney.

The Supreme Court taking notice of a decision disbarring an attorney will presume that the decision was just, and that everything stated therein was justified by the evidence.

(Opinion filed, February 10, 1909.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Election contest by George J. Danforth against George W. Egan. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Muller & Conway,* 'for appellant. *George J. Danforth, Park Davis,* and *Alpha A. Orr,* for respondent.

WHITING, J. This is an election contest case, wherein the plaintiff and respondent contests the right of defendant and appellant to qualify for, and hold the office of, state's attorney in and for Minnehaha county. The decision of the lower court was against the defendant, and he appeals from the judgment of said court, and the order of said court denying a new trial.

No questions were raised upon the pleadings, and the cause was submitted to the trial court upon the facts as they appeared in the pleadings, and by a stipulation made in open court. The facts are, in brief, as follows: The defendant, George W. Egan, a person over 25 years of age, and a resident of Minnehaha county for more than a year prior to November, 1908, did at the general election on November 3, 1908, receive a majority of the votes cast for the office of state's attorney, and received the certificate of election for said office. Said Egan had held a license to practice as an attorney in the courts of record of this state, but on October 10, 1908, by a judgment in disbarment rendered by the Supreme Court on that day, his license to practice had been revoked, and such judgment in disbarment has, since October 10, 1908, remained in full force and effect.

It is conceded that the only question in this case is as to the effect of this judgment of disbarment. Did it disqualify him from holding the said office of state's attorney? It is a matter of common knowledge that questions of this kind, relating to the exer-

cise of the right of the public to choose those who shall serve it as public officers, naturally tend to create strong feeling among the people generally, and more especially among those residing within the territory to be affected by the outcome, and we are fully aware that this case is no exception to that rule. Taking this situation into consideration, and the further fact that this case has to do with questions peculiarly important and essential to the well-being of the great profession to which we as lawyers belong, certainly from choice we would refrain from entertaining this cause and determining the question raised. This is especially true when the determination thereof depends upon the legal effect of the previous judgment of this court. The writer of this opinion, however, is happily free from any feeling of embarrassment on this ground, inasmuch as he was not a member of this court when the judgment of the court was rendered in the disbarment case. It is strongly urged in this case that the electors of Minnehaha county should not be denied their free choice to select whom they wish to serve them, and they should not, and cannot, be denied this right of choice, unless they, together with the other people of this state, have limited such right of choice by the laws they have enacted. The people have enacted laws declaring that in order for people to hold certain offices they must be possessed of certain qualifications or belong, in the case of certain offices, to certain classes, and the people have thus limited their own rights. The people have also delegated to the courts of our state the duty to administer the laws of the state, including the restrictions upon the elective franchise, and it becomes the duty of the courts to fearlessly perform this work be it ever so unpleasant. We may well repeat the words of the Supreme Court of Colorado, in a case very similar to this, and involving many of the same questions raised herein, the case being that of People v. Hallet, found in 1 Colo. 352. The court said: "While the will of the people is sovereign, still it must be expressed in accordance with recognized public law, and when it exceeds the limit of this, it is the duty of the court to interfere, and by judicial checks afford the people time for reason and reflection."

1.   Can the appellant appear in a court of record?

As we read the brief of appellant, he virtually concedes that his election to the office of state's attorney does not entitle him to appear in the courts of record of this state as such state's attorney, when he could not appear in matters not pertaining to such office; but, inasmuch as we consider this admission, if well founded, to be fatal to the claims of appellant, we will not pass it without full consideration.

Did the framers of the Constitution intend to indirectly take from the courts, in favor of a certain excepted class of persons, a right which the statutes of the territory had recognized as resting in the courts—a right recognized for centuries, by all countries and states having laws based on the English common law, as the inherent right of the court, a right necessary in the very nature of courts and the duties devolving upon them, a right which, if lost, would soon bring the courts of our land into contempt—the right to say who shall as attorneys be recognized as officers of the courts, together with the right to expel such persons whenever they have been adjudged unworthy or unfit for this important trust? This right of the courts is as much the law of our land, and of as much dignity as such, as any law found in the Constitution or statutes. It is not dependent upon either the Constitution or statutes for its existence, but exists fully in all courts of record unless expressly restricted or taken away by express legislation, and it is a serious question whether it lies within the power of the Legislature to more than regulate this right of the court, whether the Legislature can more than prescribe certain qualifications for admission, leaving to the proper court to fix others if it sees fit, and whether the Legislature can more than fix certain grounds for disbarment, leaving to the court the right to disbar for other reasons within sound judicial discretion. 3 Am. & Eng. Ency. Law, pp. 287, 300, 301; 4 Cyc. 900. No one has ever contended that our Supreme Court, in which our statutes have left this right of admission and disbarment, had not full power to exercise such right the same as to reach any other judicial determination, or that the effect of its decision or judgment had in any manner been restricted. As regards the effect of disbarment the authorities are uniform that it deprives the party disbarred of

every privilege to which his license had entitled him, not only his privileges in the court making the order of disbarment, but also his privileges in all courts. He cannot be recognized as an attorney in any courts of his own state, and the courts of other states, if aware of his disbarment, will refuse him permission to appear before them. 3 Am. & Eng. Ency. Law, 314, and cases cited. Certainly it cannot be contended, and the appellant has not in this action contended, that such judgment of disbarment was of less effect against him than as if he had not been chosen state's attorney, and it is certainly true that no court in Minnehaha county, or in any other county in this state, can recognize him as an attorney. He could only appear in a court under circumstances authorizing any layman to appear.

2. Not being able to appear in court as an attorney, can the appellant qualify for and hold the office of state's attorney?

It would seem axiomatic, too plain for argument and serious contention, that one who cannot perform the duties of an office cannot qualify therefor. Our Constitution was adopted at a time when we had a complete code of laws, providing among other things, as to what were the duties of the person holding the office, which was then termed that of "district attorney," and during statehood has been known as that of "state's attorney." The laws prescribing these duties had been in force since the very earliest days of our territory. They were in effect and in contemplation of the framers of the Constitution at the time such Constitution was drafted, it being well known that the territorial statutes would remain in full effect, as regards this matter, until such time as future Legislatures should change same. Very slight changes have been made regarding the duties of this office, the main duties of which have at all times been that of appearing for the county and state, in all civil and criminal matters, in the courts of the county. The other duties of this office are trivial as compared with this one, including, as it does in the word "appearing," the signing of every paper to be used in any manner in a case or proceeding in court. It must be conceded, therefore, that if appellant should be admitted into this office, he could perform but a small part of the duties thereof.

It was held under the old common law in England that gross· or palpable unfitne,ss for an office disqualified one to hold such office, for the reason, as it was held, "for only men of skill, knowledge, and ability to exercise the same, are capable to serve the king and his people." Throop on Public Officers, § 71. In an early New York case (Conroy v. Mayor, etc., 6 Daly [N. Y.] 490) it was held that one appointed court interpreter, who was totally ignorant of all foreign languages, could not draw pay for the time he was in said office. The court, in deciding this case, used these words: "There is no attempt to show the plaintiff is unsuited or unfit for the position he held, except in the sense of being at all times unable to perform its duties. By accepting the position of interpreter, when, if he understood no foreign language, he could not interpret at all, he stands convicted of a fraud, either upon the officer who appointed him, and the public from whom he was to receive compensation, or upon the latter alone·" So in the case at bar, leaving out of consideration any question of unfitness for the position sought, if this appellant, at the time he allowed his name to be voted on for this office, believed that if elected he would be unable to perform the most important duties of said office (and he now concedes that he cannot perform such duties), we have no hesitancy in saying that his action in allowing his name to go upon and remain on the ballot was a fraud upon the people of Minnehaha county, who had a right to exercise their choice between two or more persons, either of whom was fully authorized and qualified to perform all the duties of the office if elected. We hold this to be true no matter how unjust the appellant thought the judgment in disbarment to be, and no matter if it was in fact unjust.

It might be claimed, however, that inasmuch as the statute allows him a deputy, he could perform part of the duties himself, and the deputy could appear in court. Leaving out of consideration the question whether a principal officer can hold office in any case where he has not the qualifications required of a deputy (and the laws of this state specifically require the deputy state's attorney to be an attorney of record [section 935, Pol. Code]), let us

consider this matter of performing official duties through another. In the case of State v. Allen, 21 Ind. 516, the facts were that Allen, a county auditor, during his term of office, enlisted in the United States Army during the Rebellion, leaving his office in charge of a deputy. The office was treated as abandoned, and another person elected thereto, and action was brought to secure possession thereof. The court held that Allen had forfeited the office by his enlistment and leaving the office in charge of a deputy. The court said: "He certainly must discharge the duties of the office, for he takes an oath and gives a bond to do that. He may have a deputy to assit him, but the duties of the office must be discharged under his supervision. It is a familiar principle of law that the acceptance of every office is upon an implied contract that the acceptor will perform its duties with integrity, diligence, and skill. 2 Bla. Com. 164." To be state's attorney in this state one must take an oath "faithfully to discharge the duties of his office" (section 3, art. 21, Const.), and must give a bond conditioned to that effect. This term "faithfully to discharge the duties" refers not to part but all the duties. Such an oath could not honestly be taken by one who knew, at the time of taking it, that if allowed to enter upon the office, he could discharge but a minor part of the duties thereof, and it would be ridiculous to claim that one will be permitted to even oversee and dictate the work in a court of record who is forbidden to appear therein. We, therefore, have no hesitancy in holding that under the laws of this state appellant cannot appear as an attorney in the courts of this state, even though chosen as state's attorney of a county; that therefore he could not rightfully qualify as such state's attorney and hold such office.

3. Use of the word "attorney" in name of officer.

Let us, however, look further, and consider whether the appellant can rightfully claim that he comes under the requirements of the Constitution regarding qualifications for this office. The Constitution provides that the state's attorney shall be learned in the law, and says nothing regarding admission to practice. During the history of the territory of Dakota, and down to this time, as we have before stated, we have had, first, an officer known as

"district attorney"; then one known as "state's attorney." Some of the time there had been no attempt to define qualifications of such officer, but we venture that it has never before occurred to any one that this office could be filled by one not an "attorney," as the word "attorney" is understood when applied to a prosecuting officer, to wit, a person holding a license from some court of record. The Legislature in framing our present statute recognized this fact, and provided specifically that the state's attorney be a person duly admitted to practice as an attorney in some court of record in this state. Section 927½, Pol. Code. This provision was in the statute at the time our Constitution was framed, and had been there since the year 1883. Therefore it will be presumed that the framers of the Constitution had in mind a person possessed of this qualification when they framed the Constitution, and nothing but the very clearest reasons should compel such an interpretation of the words used in the Constitution as to nullify this plain mandate of a provision of statute that had been in force for years prior to the Constitution.

We think the word "attorney" in the name of the officer holding this office, whether he be termed "state's attorney," "district attorney," or "county attorney," forecloses all question as to intent of the framers of the Constitution. There is certainly nothing in the use of the word "attorney" when connected with the word "state's" to give to it a meaning different from that ordinarily given to it by statutes or law writers. The statutes of the territory and of the state never recognized, as entitled to the designation "attorney," any one but a person holding a license to practice law. Section 685, Pol. Code, speaking of the license to be granted says, "which license shall constitute the person receiving the same an attorney and counselor at law," etc. Without this license, no matter how learned he may be in the law, he is not an attorney. The law student fresh from his school may well be termed a lawyer, but not an attorney. Bouvier defines a lawyer as "One skilled in the law," but an attorney as "An officer in a court of justice, who is employed by a party in a cause to manage it for him," and says further, "As a general rule the eligibility of persons to hold the position of attorney at law is settled by local legis-

lation or by rule of court." To be an "officer" one must be chosen or appointed, or otherwise invested with the position. It is not a thing that a person gets merely by fitting himself therefor. It takes the act of some other person, or body of persons. This right to practice law, to be an "officer of the court," is not an absolute right, but is a privilege or license. Without any statutes on the subject of admission to practice a person could not practice as an attorney without license from the court. 4 Cyc. 898-900.. Blackstone, in speaking of the courts of Westminster Hall, and practitioners, therein says: "No man can practice as an attorney in any of those courts but such as have been admitted and sworn an attorney." Notice the peculiar wording, "admitted and sworn an attorney." From the very early days of English history we find the statutes providing that before a man could practice as an attorney he must be examined and licensed. We thus find that the word "attorney," when applied to the law, has long since had an established meaning, and refers only to parties licensed to practice. We cite with approval the following words of Martin, J., in a case similar to this (that of People v. May, 3 Mich. 598) : "Now the word 'attorney,' when used in connection with the proceedings of courts and the authority to conduct business in them, as well as when employed in a general sense with reference to the transaction of business usually, and almost necessarily, confided to members of the legal profession, has a fixed and universal signification on which the technical and proper sense unite. The legislator and the judge, the lawyer and the layman, understand it alike as having reference to a class of persons who are by license constituted officers of courts of justice, and who are empowered to appear and prosecute and defend, and upon whom peculiar duties, responsibilities, and liabilities are devolved by law in consequence." And the judge further says: "Have the people by the new Constitution attached any different signification to these words [prosecuting attorney], or taken this officer out from under the operation of chapter 95, § 26, of the Revised Statutes of 1846? We think not." The statute referred to was one similar to our section 685, Pol. Code, requiring an attorney to be licensed in order that he may practice. We, therefore, conclude that by use

of the word "attorney" in naming this officer state's attorney, the framers precluded any contention that the office could be held by any person, no matter how "learned in the law," if he had not been admitted to practice as an "attorney," and was licensed as such when he sought to qualify.

4.   Is appellant "learned in the law"?

It is the contention of appellant that, being "learned in the law," he meets the requirement of the Constitution, and is entitled to hold the office in question.   We have already shown that this phrase "learned in the law" is really mere surplusage as it is controlled by the more limited term "attorney," yet we will consider briefly this phrase, and see whether the appellant could bring himself thereunder in view of the judgment of this court in the disbarment proceedings.   To be learned in the law one certainly must be learned in all those branches of the law which have at all times been recognized as essential in order to qualify one to practice as an attorney, and to be admitted as such.   He must not only be versed in the books of law, such as those on contracts, torts, evidence, domestic relation, etc., but it is even more important that he be well based upon those rules of conduct which as a lawyer and practitioner should control his relations with his fellow lawyers, his clients, witnesses, and jurors in court, and the public in general.   Knowledge of this branch of the law, commonly known as "legal ethics," has long been recognized as the most important qualification for one who is to be entrusted with the sacred duties of an attorney at law, and our present statute recognizes this fact, and makes legal ethics one of the branches to be considered in passing upon the qualification of one seeking admission to practice.   Section 686, Pol. Code.   This court has by its judgment held that the appellant has violated many of the ethical laws which should control the conduct of an attorney.   We took no part in said judgment, but we are bound to take judicial notice of it, especially as it is referred to in the record in this case· We must as a matter of law, and we do presume that the decision of the court in the disbarment proceedings was just, and that everything stated therein was justified by the evidence.   It appears, therefore, that prior to such decision this appellant had done many

things which showed either gross ignorance of, or willful disregard of, the laws of legal ethics. When this fact has been judicially determined, as in this case, against this appellant, he will not be heard to claim that he knew his duties and the ethical rules which should have controlled his actions, and intentionally disregarded the same, but the law in its kindness will conclusively presume that he performed those acts which caused his disbarment in ignorance of his duties and of the rules of ethics, and will therefore say that no matter how well versed he may be in many branches of the law, yet being ignorant in its most important branch, he is not "learned in the law."

In the decision of the cause we have not, so far, in any way considered the decisions of this court in either the case of Jamieson v. Wiggin, 12 S. D. 16, 80 N. W. 137, 46 L. R. A. 317, or the case of Howard v. Burns, 14 S. D. 383, 85 N. W. 920, though both sides have referred to them. The first involved the office of county judge, and required a determination of what the framers of the Constitution meant in using the term "learned in the law," when designating one of the qualifications for the said office of county judge. In this case this court, through Haney, J., say that by the use of this term the framers of the Constitution held that the class who could hold the office of county judge was confined to persons who, when elected, were either admitted, or entitled to admission, without examination to practice as an attorney at law in this state. This interpretation of these words would exclude appellant from the list of those "learned in the law" in this state, as he is neither admitted, nor entitled to admission, to practice law; in fact he is expressly forbidden to practice. The defendant strenuously contends that the decision in the case of Howard v. Burns is controlling in his favor upon the issue in the case at bar. But giving the decision of Howard v. Burns full effect, it can avail appellant nothing. This court held that Howard could hold the office of state's attorney because he held a certificate to admission from the Supreme Court of Illinois, which certificate was held competent evidence that he was "learned in the law." It can readily be seen that the appellant here is in a far different situation than was Howard in the case above. Howard held his cer·

tificate from another state, unimpeached in any manner, and under the ruling of the court that was proof that he was "learned in the law." Appellant holds the certificate of the court of another state admitting him to practice in that state, and under the ruling in Howard v. Burns it would be evidence that he was "learned in the law." Against that would stand the judgment of the Supreme Court of this state saying he was "not learned in the law," a judgment which, under the law of comity between states, would undoubtedly be recognized by the courts of the state granting appellant his license, and cause such courts to refuse to recognize him as an attorney so long as the judgment of this court stands. If, as held in Howard v. Burns, the certificate from Illinois was admissible, certainly a judgment of the Supreme Court of Illinois revoking such certificate would have been admissible, and much more a judgment, as in this case, of our own Supreme Court would be admissible to overcome the prima facie case raised by the admission of such certificate.

For the reasons hereinbefore stated the judgment of the circuit court and order denying a new trial are affirmed.