47346.   HILL v. BARTLETT.

ARGUED JULY 7, 1972—DECIDED JULY 12, 1972—
REHEARING DENIED JULY 28, 1972 .

*Charles W. Hill,* in propria persona.
*Landau, Davis & Farkas, James V. Davis,* for appellee.

CLARK, Judge. Lawyer sues judge! That headline happening confronts us in this appeal where an ardent advocate zealous in protecting the traditional independence of the American attorney clashes with a conscientious police court magistrate imbued with an earnest desire for constitutional compliance in administering justice to indigent persons presented for trial in his tribunal.

As Judge of the Recorder's Court of the City of Albany, Bartlett learned some time prior to July 8, 1970, that a federal judge in Atlanta had sustained a habeas corpus proceeding which discharged all prisoners serving sentences in Fulton County after convictions in the Atlanta Recorder's Court because they had not been informed of their right to counsel which was followed by a similar ruling by the Superior Court of Dougherty County discharging four prisoners who had been sentenced by Bartlett. In view of these decisions and upon advice of the Albany City Attorney together with the cooperation of the Albany Bar Association Bartlett established a system of rotating the members of the local bar[1] to make them available without fee to repre-

---

[1] The District of Columbia bar adopted a similar system in 1971 whereby every member under 60 and not employed by the Government was required to take his turn representing indigent defendants but paid reduced fees for such services. *Time* of June 26, 1972, says "So far the plan has broad co-operation." The *Wall Street Journal* of the same date discusses other plans to provide counsel for indigents facing jail sentences for minor offenses under the caption "What Price Justice?"

sent indigent defendants in the Police Court of Albany.

The instant imbroglio developed from a delayed appearance by Attorney Hill on October 12, 1970, with a disagreement between the parties here as to the details of the incident which resulted in Hill being ruled to be in contempt of court and sentenced to pay $25 or spend eight days in jail. He was incarcerated but through another attorney retained by him posted bond and was released after one hour. The recorder also informed Hill of his intention to have him appear in Albany Recorder's Court on October 15, 1970, for appointment to represent indigents. Hill then filed an injunction proceeding in the superior court asserting the recorder lacked the power "to command the appearance of plaintiff or any other attorney for the purpose of appointing him to represent the indigent." After an adverse ruling in the lower jurisdiction Hill took an appeal to our Supreme Court. There in *Hill v. Bartlett,* 227 Ga. 385 (181 SE2d 57), the opinion concluded: "The decisive question in this case is whether the recorder is required to appoint counsel to represent, in the Recorder's Court of the City of Albany, an indigent defendant who is charged with violating the laws and ordinances of the City of Albany. In our opinion the answer is in the negative." (This decision was on March 4, 1971, prior to the recent ruling on June 12, 1972, of Argersinger v. Hamlin, 40 Law Week 4679, 32 LE2d 530).

It should be noted this previous appeal did not deal with the contempt sentence. The record in the present appeal does not show the outcome but through appellant's excellent supplemental brief in which he has argued extensively and eloquently his position it appears certiorari had been obtained on the contempt conviction and that after the Supreme Court decision this certiorari had been sustained with the contempt judgment of the Recorder's Court being reversed on October 1, 1971.

Hill next sued Bartlett for $15,000 damages alleging he had been "illegally arrested and illegally imprisoned." Bartlett's answer averred "The acts complained of were acts done by the defendant as a judicial officer, and the defend-

ant is immune from liability." Both parties filed summary judgment motions with supporting affidavits. The trial judge entered an order in three parts: (1) sustaining objection of defendant to plaintiff's counter-affidavit as not being timely filed; (2) granting defendant's motion for judgment in his favor and against plaintiff; and (3) denying plaintiff's motion.

This appeal is by plaintiff from that order. *Held:*

1. Was the recorder here clothed with the protective mantle of "judicial immunity?"

Although Georgia alone of any American commonwealth was without a Supreme Court for the first 70 years of our State's existence, our forbears were blessed prior to 1845 with a bench "ornamented by men whose ability has never been equalled in any period of the State's history" (1907 Ga. Bar Assoc. Reports, page 91—"History of Supreme Court" by Joseph R. Lamar[2]). Beginning in 1830 these legal luminaries chaired by the famous William H. Crawford convened semi-annually and their opinions which are found in George M. Dudley's compilation provide superlative judicial directives. In July 1832 they reported the case of Leroy Upshaw v. James Oliver et al. which is to be found at page 241 of the Dudley volume. There the civil suit arose out of an arrest and imprisonment in which the defendants had acted in a judicial capacity but plaintiff's counsel contended there was an "admission by one of the defendants, that he knew the proceedings of the court were illegal" so that at least as to him the action should be sustained. The court stated: "The current of authorities from the earliest dawn of jurisprudence down to the latest reported cases, not only in the courts of Great Britain, but of the United States, shield judicial officers from civil actions and criminal prosecutions (except by way of impeachment) for acts done in their judicial character." Although pronounced 140 years

---

[2]An Augustan who later became a U. S. Supreme Court justice, serving from 1911 to 1916, the other Georgian occupying that capacity for 32 years (1835—1867) was the famous Savannahian, James Moore Wayne.

ago, the reason therein stated still applies: "The court believes that the welfare and peace of the community depend upon a strict adherence to the principle which has been universally established by all civilized nations on this subject."

Such immunity was applied to a justice of the peace in *Long v. Carter*, 39 Ga. App. 508 (147 SE 401).

Does judicial immunity extend to a police court judge? An affirmative answer is required under *Calhoun v. Little*, 106 Ga. 336, 339 (32 SE 86, 43 LRA 630, 71 ASR 254) where it is observed: "It is universally conceded that judges of courts of superior and general jurisdiction are exempt from liability in damages for judicial acts, even when such acts are in excess of their jurisdiction. This doctrine has become firmly fixed in the jurisprudence of both England and the United States. Upon its strict application depends, to a very great extent, the usefulness of courts and the fearless and impartial administration of justice . . ."

The Supreme Court in the *Calhoun* case went on to hold that this immunity extends to judicial officers of inferior tribunals. The court further stated at page 341 the general rule which obtains in Georgia and other jurisdictions[3]:

"We must not be understood, however, as ruling that these officers have immunity from civil liability in all cases. As was said in Bradley v. Fisher, [20 LE 646], 13 Wall. 335, 352, 'Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.'. . [A]ll judicial officers stand on the same footing and must be governed by the same rules. It follows from what has been said, that where the court has jurisdiction of the subject-matter of the offense, and the presiding officer erroneously decides that the court has jurisdiction of the person committing it, or commits an act in excess of his

[3]48 CJS, Judges, § 63; 35 CJS, False Imprisonment, § 44; 46 AmJur2d, Judges, §§ 72-83; Annots. 13 ALR 1344; 55 ALR 282; 173 ALR 802.

jurisdiction, he will not be liable in a civil action for damages. But where there is a clear absence of jurisdiction over the subject-matter, the officer will be liable for exercising it, provided such want of jurisdiction is known to him."

With the foregoing guidance we consider the case at hand.

First we note that by statute the Albany Recorder's Court was not only granted jurisdiction to try all offenders of city ordinances and "investigation of any charge involving or amounting to a violation of the penal laws of Georgia" but specifically granted "the same powers as judges of the superior courts of this State to punish for contempt of said police court" limited to maximum fine of $25 and a jail sentence of 10 days. Ga. L. 1923, pp. 370, 395. Thus the presence here of a general contempt jurisdiction is undeniable in addition to the inherent power which exists in all courts. *Cobb v. State,* 187 Ga. 448 (200 SE 796); 121 ALR 210. This inherent power to punish for contempt exists also in recorder's courts. *Brooks v. Sturdivant,* 177 Ga. 514 (170 SE 369). See also Annotation in 54 ALR 318.

All American judges, whether they be appellate, superior court or inferior tribunal, including police court recorders, have the mandate of making certain that the accused receive a fair trial. We now recognize that this imposes the necessity of having an accused defendant represented by competent counsel. As was written by the late Professor Elliott E. Cheatham, an Atlantan, who achieved pre-eminence as a legal scholar while teaching law at Cornell, Columbia and Vanderbilt, at page 7 of his book, *A Lawyer When Needed,* "We wish to live under a rule of law and we know that one of its elements is a lawyer when needed. The need for a lawyer leads to the legal right to counsel. Yet the legal right alone is not enough ... While it is important that there be the right to counsel under the law, it is even more important that counsel be available in fact." Recorder Bartlett sought to make this a reality with the help of the Albany Bar Association.

Next, we consider the relationship which exists between

an attorney and all courts. This is best explained in *Sams v. Olah,* 225 Ga. 497 (169 SE2d 790). This was the case which upheld the Act providing for the incorporation of the State Bar of Georgia. There at page 504 Justice (now Chief Justice) Mobley wrote:

"The lawyer stands in a unique position in our society. He is by virtue of the practice of his profession an officer of the court. *Platen v. Byck,* 50 Ga. 245, 248; *Bibb County v. Hancock,* 211 Ga. 429, 438 (86 SE2d 511). In *Gordon v. Clinkscales,* 215 Ga. 843, 845, 846 (114 SE2d 15), this court quoted with approval from 7 CJS 708, Attorney and Client, § 4 b, as follows: 'The right to practice law is not a natural or constitutional right, nor an absolute right or a right de jure, but is a privilege or franchise.' It also quoted with approval from 7 CJS 706, Attorney and Client, § 4 a, as follows: 'An attorney does not hold an office or public trust, in the constitutional or statutory sense of that term, but is an officer of the court. He is, however, in a sense an officer of the state, with an obligation to the courts and to the public no less significant than his obligation to his clients. The office of attorney is indispensable to the administration of justice and is intimate and peculiar in its relation to, and vital to the well-being of, the court.'"

As an attorney-at-law, therefore, appellant was at all times subject to the jurisdiction of the recorder's court. Furthermore, as was stated in *Weiner v. Fulton County,* 113 Ga. App. 343 (148 SE2d 143) cert. den. 385 U. S. 958 (87 SC 393, 17 LE2d 304), he had to comply with a court request for him to render his services without charge to an indigent accused. The fulfillment of this professional obligation is indeed as described by the great Justice McCay[4] in *Elam v. Johnson,* 48 Ga. 349 "the pride and glory of the profession from time immemorial." Undoubtedly, appellant

---

[4]Described by Savannah's Alexander A. Lawrence as belonging in Georgia's "judicial Valhalla" in his scintillating study appearing in 9 Ga. Bar Jour. 5 (August 1946) entitled "Henry Kent McCay—Forgotten Jurist."

understood this as he did in fact make an appearance in the Albany Police Court. Recognizing also the traditional independence of the American lawyer he proceeded to enforce his beliefs by certiorari on the contempt conviction and by injunction as to his right of rejecting future court assignments. He was personally vindicated by the Supreme Court decision of *Hill v. Bartlett,* supra, and the subsequent reversal in the certiorari.

But such personal vindication did not make the Recorder civilly liable for his judicial ruling of contempt of court. Certainly, in view of the narrowness of the Supreme Court's opinion we cannot consider it to be "the law of the case." As we have noted, it did not deal with the contempt. Instead in deciding appellant's equitable action to enjoin the recorder from requiring Hill to be available under the rotation system on the next scheduled court date the Supreme Court decided only one question: was the recorder required to appoint counsel? In answering that question the court did not declare the contempt conviction as being illegal.

(Of course if the same question were today presented to our Supreme Court the judges would recognize the supremacy of the ruling in Argersinger v. Hamlin, supra, which states ". . . Absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.")

Independence of the legal profession must be maintained, but it is ultra-important in our democracy to preserve the doctrine of judicial immunity to enable our judges to exercise within their lawful jurisdiction untrammeled determination without apprehension of subsequent damage suits.

As the defendant's acts which are decisive of the alleged claim of "illegal arrest" and "illegal imprisonment" were within his judicial capacity with jurisdiction over the cause and person, the trial court was correct in its rendition of judgment for the defendant.

2. In view of the judicial immunity doctrine being applicable, it is not necessary to pass upon the enumerations of error dealing with the plaintiff's counter-affidavit or the denial of plaintiff's summary judgment motion.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*