GORDON C. PETERSON v.
OSCAR KNUTSON AND OTHERS.

233 N. W. 2d 716.

August 8, 1975—No. 45333.

*Gordon C. Peterson,* pro se, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, and *Thomas H. Jensen,* Special Assistant Attorney General, for respondents.

Heard before Sheran, C. J., and Yetka, Scott, Amdahl, Fosseen, Hachey, Mulally, Nicholson, and Schultz, JJ.*

SHERAN, CHIEF JUSTICE.

Appeal by plaintiff from a judgment of the Ramsey County District Court. Affirmed.

Plaintiff brought this suit for damages of $750,000, claiming to have been injured by the participation of those defendants who, as sitting justices of the Minnesota Supreme Court, heard and decided In re Candidacy of Daly, 294 Minn. 351, 200 N. W. 2d 913, certiorari denied sub nom. Daly v. McCarthy, 409 U. S. 1041, 93 S. Ct. 528, 34 L. ed. 2d 491 (1972), which mandated that plaintiff's name be stricken from the November 1972 general

---

*District Court Judges Douglas K. Amdahl, Rolf Fosseen, Ronald E. Hachey, Edward D. Mulally, Dana Nicholson, and Harold W. Schultz acted as justices of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2, for the hearing and decision of this case.

election ballot for supreme court justice. Plaintiff also alleged that defendants C. Donald Peterson and Fallon Kelly, members of the court who did not sit in that case, wrongfully influenced the decision.

The trial court dismissed the action as to defendants Kelly and Peterson on the ground they were not proper parties and ordered summary judgment for all defendants principally because:

(1)   Judges are not subject to a civil action for damages by persons who disagree with decisions made in the exercise of judicial duty; and

(2)   Plaintiff, having previously sued these defendants and others in the United States District Court on a damages-based theory virtually indistinguishable from that employed here, is barred from now relitigating claims decided against him in that court.

On July 14, 1972, plaintiff filed for election to the office of associate justice of the Minnesota Supreme Court, seeking the position then held by defendant Kelly. Proceedings were instituted pursuant to Minn. St. 1971, § 203.38, subd. 1,[1] to determine

---

[1] Minn. St. 1971, § 203.38, subd. 1, reads: "When it shall appear by affidavit to any judge of the supreme court in the case of a state election, or of the district court of the proper county in the case of a county election:

(a)   That an error or omission in the placing or printing of the name or description of any candidate on official primary or general election ballots has occurred or is about to occur; or

(b)   That any other error in preparing or printing the ballots has occurred or is about to occur; or

(c)   That any officer of a political party or political party committee has failed to properly make or file a certificate of nomination; or

(d)   That any wrongful act, neglect, or error by any election judge, county auditor, canvassing board or member thereof, secretary of state, or other person charged with any duty concerning an election, has been or is about to be done,

then the judge immediately shall order the officer, person, or board charged with the error, wrong, neglect, or failure to correct the same or perform the duty forthwith or show why he should not do so. Failure to obey the order is contempt of court."

whether plaintiff and others were eligible to have their names appear on the ballots. The single issue for decision was whether plaintiff possessed the qualifications required for the office sought. These qualifications were specified by Minn. Const. art. 6, § 7, which then provided in pertinent part: "Judges of the supreme court * * * shall be learned in the law."[2]

Plaintiff was once admitted to practice law but had been disbarred June 23, 1961. In concluding that plaintiff therefore did not possess these qualifications, the defendants other than defendants Peterson and Kelly, sitting as the Minnesota Supreme Court, reasoned that (1) to be "learned in the law" within the meaning of the constitution, one must be eligible to practice law; (2) a disbarred attorney is one whose privilege to practice law has been revoked. Since Gordon C. Peterson was not entitled to practice law in the courts of this state, he was not "learned in the law" and was not eligible to file for or hold the office he desired. In re Candidacy of Daly, *supra*.

Plaintiff's claims have been presented to the Federal courts. In Peterson v. Knutson, 367 F. Supp. 515 (D. Minn. 1973), affirmed without published opinion, No. 74-1113 (8 Cir., July 8, 1974), plaintiff brought an action against the defendants now named and others in the United States District Court for damages in the amount of $990,000, contending that the actions of the Minnesota court in deciding In re Candidacy of Daly, *supra*, denied him Federally protected rights. The United States District Court dismissed the complaint on the grounds that there was no Federal jurisdiction and that the defendants were protected by judicial and quasi-judicial immunity. An appeal was taken to the Court of Appeals for the Eighth Circuit, which affirmed the dismissal in the unpublished opinion cited above. That opinion stated:

"A brief survey of the underlying facts of the case reveals that

[2] That provision is now found in Minn. Const. art. 6, § 5, as amended in 1974.

appellant is a disbarred attorney who sought placement on the ballot for the November 1972 general election as a candidate for the Minnesota Supreme Court. The Secretary of State initiated proceedings pursuant to Minn. Stat. §203.38, subd. 1 (1971), to resolve the question of whether Peterson's disbarment precluded him from candidacy under the provisions of Minn. Const. Art. VI, §7, which requires that Justices of the Supreme Court be 'learned in the law.' In the case of *In re Daly*, 200 N. W. 2d 913 (Minn. 1972), Peterson and several other potential candidates for judicial office were held ineligible and their names were ordered struck from the ballot. A petition for a writ of certiorari was denied by the United States Supreme Court, *sub nom. Daly v. McCarthy*, 409 U. S. 1041 (1972), and eventually this suit was instituted. Chief Judge Edward J. Devitt of the District of Minnesota examined appellant's contentions and dismissed the action.

"It is clear from the record that the appellees were acting well within the scope of the official and judicial authority vested in them by Minnesota statutes and laws. Their conduct, therefore, is protected by well-settled principles of immunity. *See, Scheuer v. Rhodes*, 94 S. Ct. 1683 (1974) ; *Pierson v. Ray*, 386 U. S. 547 (1967) ; *Barr v. Matteo*, 360 U. S. 564 (1959); *Wilhelm v. Turner*, 431 F. 2d 177 (8th Cir. 1970), *cert. denied*, 401 U. S. 947 (1971) ; *Rhodes v. Houston*, 202 F. Supp. 624 (D. Neb.), *aff'd*, 309 F. 2d 959 (8th Cir. 1962). It avails appellant nothing to assert in this proceeding the alleged unconstitutionality of the statutes under which appellees acted, for that issue is collateral to the question of the scope of appellees' jurisdiction."

Notwithstanding the fact that plaintiff's application for certiorari to review the Daly decision was denied by the United States Supreme Court,[3] and notwithstanding the determination

---

[3] Certain of the issues presented in the Federal forums, and now again in the state forum, were considered by the court in In re Candidacy of Daly, 294 Minn. 351, 200 N. W. 2d 913, certiorari denied sub nom.

made by the United States District Court and affirmed by the United States Court of Appeals for the Eighth Circuit, plaintiff contends that the decision below should be reversed for these reasons:

(1)   Fallon Kelly and C. Donald Peterson, the members of the Minnesota Supreme Court whose offices were contested by plaintiff and Jerome Daly, were so closely associated with other members of the court who decided the Daly case that the decision was of necessity tainted with bias, amounted to an abuse of power, was unfair, and therefore a nullity, all to plaintiff's injury.

(2)   Most of the judges who sat as members of the supreme court and rendered the decision in Daly were persons who could themselves be candidates for reelection to the supreme court and were, consequently, personally interested in the outcome, so much so as to make the decision biased, abusive, unfair, and injurious to plaintiff.

(3)   The denial to plaintiff of a fair and impartial tribunal in the proceedings which culminated in the Daly decision constituted a violation of plaintiff's rights, including rights specifically guaranteed by the Federal and State Constitutions, making defendants responsible to him for damages allegedly suffered.

1.   The charge that one called upon to exercise judicial responsibility is biased, abusive, or unfair is one which must always be considered carefully. This is so because the major responsibilities which have been entrusted to our judiciary cannot be adequately discharged without public support based upon a widespread confidence and popularly shared belief that judges treat all those coming before them fairly, courteously, respectfully, and without prejudice. As a matter of duty, judges must

Daly v. McCarthy, 409 U. S. 1041, 93 S. Ct. 528, 34 L. ed. 2d 491 (1972), and the trial court held that plaintiff is collaterally estopped from relitigating those issues. We do not, however, elect to rest decision on this basis alone.

so treat all parties before them regardless of the identity of the parties, the nature of the problems they are called upon to deal with, or any other consideration.

Where parties before a court include persons well known to the judges responsible for decision, performance of the duty referred to is, of course, more difficult on occasion than it would be were the parties strangers to the court. Where the result to be reached may affect the situation of a judge called upon to decide a matter, adherence to this fundamental duty becomes even more necessary and judicial action taken will be subject to even closer public scrutiny.

In some instances, a judge upon whom the responsibility for decision is placed can properly recuse and should do so.[4] There are, however, circumstances where this is not a reasonable response to the perceived difficulties. When a case or controversy arises demanding solution, the matter cannot be ignored. Those persons vested by the people with the power of the state to resolve these differences, that is, legitimately to exercise judicial authority, are limited in number by the people through our constitution and statutes.

There are times when the refusal of a judge to participate in decision, that is, a refusal to exercise those powers unique to the office, would leave critical issues without answers. Such an abdication of responsibility and jurisdiction is unthinkable. In this situation, judges have a duty to, and must, participate and de-

---

[4] See, e.g., Canon 3C, Minnesota Code of Judicial Conduct, adopted February 20, 1974; Rule 63.02, Rules of Civil Procedure; Minn. St. 542.13. The cases under the rule and statute are numerous. It is questionable, however, whether the rule or statute apply in supreme court proceedings. If a supreme court member wrongfully fails to disqualify himself, a statutory remedy may be furnished by the provisions of Minn. St. 490.15 to 490.18.

See, Pahl v. Whitt, 304 S. W. 2d 250 (Tex. Civ. App. 1957); Di Lodovico v. Dotson, 1 Misc. 2d 505, 151 N. Y. S. 2d 469 (1956); and Oakley v. Aspinwall, 3 N. Y. 547 (1850), cited by plaintiff. Cf. People v. Scott, 34 App. Div. 2d 407, 313 N. Y. S. 2d 185 (1970).

cide, although personal preference might have it otherwise. When a judge so acts, it is with full knowledge that the propriety of the judicial process will be subject to, at least, critical public analysis. It is uniquely imperative, therefore, that the result reached be based upon a most careful assessment of fact and application of sound legal principle, all demonstrative of the integrity of the process.

On occasion, challenge to a result reached below may be based on an unresponded-to claim of bias and unfair dealing on the part of the presiding judge. Such challenge may be cause for a new trial. In other cases, like this one, claims of bias and unfairness may be attempted to be associated with an alleged injury. That the result obtained through the judicial process can later be shown to be fundamentally erroneous does not necessarily show bias or abuse of power, nor will it undercut the affirmative defense of judicial immunity. Significantly, though, demonstration of a correct result can effectively show that the alleged bias, abuse, and unfairness, if it existed, did not result in legal injury to plaintiff.

At the time the Daly case was decided, a member of this court who recused could be replaced by a retired supreme court justice or by a district court judge. There was no limitation on the number of retired supreme court justices who could participate in the decision of the case, but under the statute then in force, no more than one district court judge could be called upon to serve at any one time.[5]

The two judges of the Minnesota Supreme Court who were actually candidates for reelection in the 1972 contest did disqualify themselves from consideration of the Daly case. Replacements for these members of the court were secured: One retired associate justice and one district court judge. Since further replacement of members of this court under the law then in effect was not possible, the remaining judges, and the replacement

---

[5] Minn. St. 1971, § 2.724, subd. 2.

judges, acted correctly and responsibly in participating in and deciding In re Candidacy of Daly, *supra*.[6] Their jurisdiction to act was not abused or exceeded.

Moreover, in our view, In re Candidacy of Daly, *supra,* was clearly right as a matter of law and fact. The facts in that proceeding were undisputed. Plaintiff does not contest that he was a disbarred attorney at the time he filed for election as an associate justice of the Minnesota Supreme Court. The disbarment occurred in 1961,[7] and applications for reinstatement made in 1966[8] and again in 1970[9] had been denied.

Plaintiff has argued that, as a result of defendants' antipathies toward him, he was deprived of a constitutional right to a jury trial by the court's opinion ordering his name stricken from the ballot. Neither the State nor Federal Constitution, nor any statute, provides for a jury trial in instances of this kind.

While plaintiff does not deny the fact of his disbarment, he contends now, as he has contended at all stages in these proceedings, that a disbarred attorney is, notwithstanding this circumstance, "learned in the law" within the meaning of the constitutional requirement. We are persuaded that this was not true in 1972, and it is not true today.

If Minnesota were the only jurisdiction to have decided this question against him, there might be some plausibility to plaintiff's claim that the association of the judges who decided the Daly case with the judges then standing for election, and their own self-interest in future elections, accounted in some way for the result in the Daly case and its consequences to plaintiff. But

---

[6] State ex rel. Gardner v. Holm, 241 Minn. 125, 62 N. W. 2d 52 (1954); Payne v. Lee, 222 Minn. 269, 24 N. W. 2d 259 (1946).

[7] In re Application for Discipline of Peterson, 260 Minn. 339, 110 N. W. 2d 9 (1961).

[8] In re Application for Reinstatement of Peterson, 275 Minn. 559, 146 N. W. 2d 768 (1966).

[9] In re Application for Reinstatement of Peterson, 288 Minn. 550, 181 N. W. 2d 341 (1970).

the fact is that the same result has been reached by judges and courts having neither acquaintance nor affinity with the Minnesota Supreme Court judges who decided the Daly case.

The South Dakota Supreme Court so concluded by way of dictum in Danforth v. Egan, 23 S. D. 43, 119 N. W. 1021 (1909). In State ex rel. Willis v. Monfort, 93 Wash. 4, 159 P. 889 (1916), the court decided that it would be "absurd" to claim that a suspended lawyer continued to be "admitted to practice" within the meaning of a constitutional provision making admission to practice a condition of eligibility for judicial office.[10] In State ex rel. Anderson v. Stice, 186 Kan. 69, 348 P. 2d 833, certiorari denied, 364 U. S. 823, 81 S. Ct. 59, 5 L. ed. 2d 52 (1960), the court concluded that a judge admitted to practice at the time of his election should nevertheless be removed from office when disbarred. And in State ex rel. Fugina v. Pierce, 191 Wis. 1, 209 N. W. 693 (1926), the court held that the requirement that a judge be an attorney qualified to practice is a continuing one which must subsist during the entire term of office. See, also, In re Integration of the Bar, 5 Wis. 2d 618, 626, 93 N. W. 2d 601, 605 (1958). These results remain unimpaired.[11]

As against this, we have found no case which holds that a disbarred attorney is "learned in the law" or is entitled to act as a judge, with the special responsibilities and powers of that position, when a condition for the position is that the person seeking it be entitled to practice law before the court on which, if elected, he would serve.

Our review of the reasoning underlying the Daly decision is

[10] But cf. In re Kapcia, 389 Mich. 306, 205 N. W. 2d 436 (1973).

[11] See, Johnson v. State Bar of California, 10 Cal. 2d 212, 73 P. 2d 1191 (1937). Cf. State ex rel. Chavez v. Evans, 79 N. M. 578, 446 P. 2d 445 (1968); State ex rel. Smith v. Bohannan, 101 Ariz. 520, 421 P. 2d 877, appeal dismissed, 389 U. S. 1, 88 S. Ct. 55, 19 L. ed. 2d 1 (1967); In re Stolen, 193 Wis. 602, 214 N. W. 379, 55 A. L. R. 1355 (1927); In re Opinion of Justices, 240 Mass. 611, 135 N. E. 305 (1922); Danforth v. Egan, 23 S. D. 43, 119 N. W. 1021 (1909). But cf. In re Kapcia, *supra*.

not to be understood as approving use of the present action to collaterally attack the result had there or to show bias in that earlier proceeding. We have reviewed Daly here only to underscore the careful and proper application of law by judges under difficult circumstances, and to demonstrate that plaintiff could not prove causation in this action. The correctness of the result reached there establishes that the decision did no legal injury to plaintiff and strongly suggests that any damage plaintiff may have suffered is attributable to the reason and rule of dispassionate law, not to the prejudices and abuses of vindictive jurists.

Even had we differed with the decision reached by the court acting in Daly, reversal would not follow. Judicial immunity suffices to require affirmance in this case.

2. We also hold that this case was one for summary judgment on principles of res judicata [12] and judicial immu-

---

[12] As appellant has not chosen to raise the issue of res judicata on this appeal, we would not ordinarily consider it. See, In re Estate of Murphy, 269 Minn. 393, 131 N. W. 2d 220 (1964); Bush v. Havir, 253 Minn. 318, 331, 91 N. W. 2d 784, 793 (1958); Schwartz v. First Trust Co. of St. Paul, 236 Minn. 165, 172, 52 N. W. 2d 290, 295 (1952). Dufour v. Benson, 263 Minn. 376, 117 N. W. 2d 2 (1962), suggests that summary affirmance as to this issue might be appropriate.

The matter was, however, addressed by respondents in their brief and on argument. We reach the issue. See, Benson v. Continental Cas. Co. 275 Minn. 544, 146 N. W. 2d 358 (1966); Cordell v. Chanhassen Auto Body, 269 Minn. 103, 130 N. W. 2d 362 (1964); Kuhlmann v. Educational Publishers, Inc. 245 Minn. 171, 71 N. W. 2d 889 (1955).

These cases support the result we reach: Antonson v. Ekvall, 295 Minn. 558, 204 N. W. 2d 446 (1973); McMenomy v. Ryden, 276 Minn. 55, 148 N. W. 2d 804 (1967); Howe v. Nelson, 271 Minn. 296, 135 N. W. 2d 687 (1965); Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N. W. 2d 364 (1955); Melady-Briggs Cattle Corp. v. Drovers State Bank, 213 Minn. 304, 6 N. W. 2d 454 (1942).

See, also, 10B Dunnell, Dig. (3 ed.) § 5163; 1B Moore, Federal Practice (2 ed.) pars. 0.405[5], 0.409[1]; Wright & Miller, 9 Federal Practice and Procedure, § 2373; American Heritage Life Ins. Co. v. Heritage Life Ins. Co. 494 F. 2d 3 (5 Cir. 1974); Hubicki v. ACF Industries, Inc. 484

nity.[13] Perhaps more significant is our holding that the judges associated with the Daly decision took part in response to their legal duty, given the legislative mandate that cases of that kind be decided by the supreme court, and given the limitations on the availability of replacement judges for those who otherwise might

F. 2d 519 (3 Cir. 1973); Brennan v. Rhodes, 423 F. 2d 706 (6 Cir. 1970).

[13] See, Pierson v. Ray, 386 U. S. 547, 87 S. Ct. 1213, 18 L. ed. 2d 288 (1967); Spalding v. Vilas, 161 U. S. 483, 16 S. Ct. 631, 40 L. ed. 780 (1896); Bradley v. Fisher, 80 U. S. (13 Wall.) 335, 20 L. ed. 646 (1871); Randall v. Brigham, 74 U. S. (7 Wall.) 523, 19 L. ed. 285 (1868); Littleton v. Berbling, 468 F. 2d 389 (7 Cir. 1972), reversed in part on other grounds sub nom. O'Shea v. Littleton, 414 U. S. 488, 94 S. Ct. 669, 38 L. ed. 2d 674 (1974); Barnes v. Dorsey, 480 F. 2d 1057 (8 Cir. 1973); Schwartz v. Weinstein, 459 F. 2d 882 (8 Cir. 1972); Serbus v. Hoffman, 450 F. 2d 296 (8 Cir. 1971); Collins v. Moore, 441 F. 2d 550 (5 Cir. 1971); Wilhelm v. Turner, 431 F. 2d 177 (8 Cir. 1970), certiorari denied, 401 U. S. 947, 91 S. Ct. 919, 28 L. ed. 2d 230 (1971); Bauers v. Heisel, 361 F. 2d 581 (3 Cir. 1966), certiorari denied, 386 U. S. 1021, 87 S. Ct. 1367, 18 L. ed. 2d 457 (1967); Rhodes v. Houston, 202 F. Supp. 624 (D. Neb.), affirmed, 309 F. 2d 959 (8 Cir. 1962); Meredith v. Van Oosterhout, 286 F. 2d 216 (8 Cir. 1960), certiorari denied, 365 U. S. 835, 81 S. Ct. 749, 5 L. ed. 2d 745 (1961); Johnson v. MacCoy, 278 F. 2d 37 (9 Cir. 1960); Adkins v. Underwood, 370 F. Supp. 510 (N. D. Ill. 1974); United States v. Clark, 249 F. Supp. 720 (S. D. Ala. 1965); Hoppe v. Klapperich, 224 Minn. 224, 28 N. W. 2d 780 (1947); Payne v. Lee, *supra;* Linder v. Foster, 209 Minn. 43, 295 N. W. 299 (1940); Murray v. Mills, 56 Minn. 75, 57 N. W. 324 (1894); Stewart v. Case, 53 Minn. 62, 54 N. W. 938 (1893); Stewart v. Cooley, 23 Minn. 347 (1877).

See, also, State ex rel. Gardner v. Holm, *supra.* Cf. Gammel v. Ernst & Ernst, *supra;* Wilbrecht v. Babcock, 179 Minn. 263, 228 N. W. 916 (1930); Roerig v. Houghton, 144 Minn. 231, 175 N. W. 542 (1919); Melady v. South St. Paul Live Stock Exchange, 142 Minn. 194, 171 N. W. 806 (1919).

See, also, Bellamy v. Gates, 214 Va. 314, 200 S. E. 2d 533 (1973); Hill v. Bartlett, 126 Ga. App. 833, 192 S. E. 2d 427 (1972); Linde v. Bentley, 482 P. 2d 121 (Wyo. 1971); Dear v. Locke, 128 Ill. App. 2d 356, 262 N. E. 2d 27 (1970); Headley v. Ball, 284 Ala. 488, 226 So. 2d 90 (1969); Reynolds v. Hart, 54 Misc. 2d 476, 282 N. Y. S. 2d 909 (1967); Olepa v. Mapletoff, 2 Mich. App. 734, 141 N. W. 2d 350 (1966).

recuse. In this case, plaintiff's logic would have disqualified the entire supreme court of this state, leaving unmet the obligations placed upon the court by the legislature. The judicial branch cannot be so manipulated as to become powerless to accomplish the tasks entrusted to it.

We recognize that bias and abuse cannot be proved by incorrect result, nor is it true that a judge can be held liable in damages for a mistaken decision. It is also clear that bias is not necessarily lacking when the result is sound. A correct decision can, however, effectively show lack of causation of any damage through bias, and our subsequent consideration and approval of the earlier result should confirm public confidence in judicial performance and the integrity of the judicial process.

There was authority to act; the actions taken were taken of necessity; the actions taken were protected by judicial immunity. The claim is barred by the principle of res judicata; and there was no abuse of power.

Affirmed.

Associate Supreme Court Justices James C. Otis, Walter F. Rogosheske, C. Donald Peterson, Fallon Kelly, John J. Todd, and Harry H. MacLaughlin, Retired Chief Justice Oscar R. Knutson, and Retired Associate Justice William P. Murphy, who are defendants in this action, took no part in the consideration and decision of the appeal herein.