# IN RE CANDIDACY OF JEROME DALY AND OTHERS.*

200 N. W. 2d 913.

September 8, 1972—No. 43867.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Byron E. Starns,* Assistant Attorney General, for respondents.

*Jerome Daly, Gordon C. Peterson, William E. Drexler,* and *Charles Thibodeau,* pro se, for candidates.

PER CURIAM.

This is a proceeding under Minn. St. 203.38, subd. 1, to determine the eligibility of four individuals to have their names appear on the ballots for the general election to be held November 7, 1972, as candidates for justice of the supreme court or judge of the district court.

Jerome Daly was admitted to practice law in this state on May 14, 1953. He was disbarred by order of this court on July 16,

---

* Certiorari denied, sub nom. Daly v. McCarthy, —— U. S. ——, 93 S. Ct. 528, 34 L. ed. 2d 491 (1972).

1971. William Edward Drexler was admitted to practice law in this state on October 13, 1961. He was disbarred by order of this court on June 18, 1971. Gordon Clinton Peterson, also known as Gordon C. Peterson, was admitted to practice law in this state on April 29, 1942. He was disbarred by order of this court on June 23, 1961. Charles Thibodeau has never been admitted to practice law in this state.

On July 14, 1972, Jerome Daly filed an affidavit with the secretary of state as a candidate for the office of associate justice of the supreme court held by C. Donald Peterson; on the same date, Gordon C. Peterson filed an affidavit with the secretary of state as a candidate for the office of associate justice of the supreme court held by Fallon Kelly; William E. Drexler filed his affidavit with the county auditor of Ramsey County as a candidate for the office of judge of the district court held by Sidney P. Abramson; and Charles Thibodeau filed his affidavit with the county auditor of Hennepin County for the office of judge of the district court, family court division, held by A. Paul Lommen. Each paid the filing fee required by Minn. St. 202.05.

Based upon the affidavits of Arlen I. Erdahl, secretary of state of the State of Minnesota, Lou McKenna, county auditor of Ramsey County, and George B. Hickey, county auditor of Hennepin County, questioning whether the above named individuals, or any of them, are eligible to file for or to hold the office for which they seek to have their names on the ballots in the November 1972 general election, we issued our order to show cause pursuant to § 203.38, subd. 1, why the secretary of state and the respective county auditors should not be commanded to refrain from placing the names of either or any of these prospective candidates on the ballots for the general election to be held November 7, 1972.

The proceeding is brought here as an original proceeding under § 203.38, subd. 1, which reads:

"When it shall appear by affidavit to any judge of the supreme

court in the case of a state election, or of the district court of the proper county in the case of a county election:

"(a) That an error or omission in the placing or printing of the name * * * of any candidate on official primary or general election ballots has occurred or is about to occur; or

"(b) That any other error in preparing or printing the ballots has occurred or is about to occur; * * *
then the judge immediately shall order the officer, person, or board charged with the error, wrong, neglect, or failure to correct the same or perform the duty forthwith or show why he should not do so."

Section 203.38, subd. 1, was designed to provide an expeditious procedure for legal determination of the proper preparation of ballots to be used at a primary or general election. The need for such procedure has long been recognized. In State ex rel. Olson v. Scott, 105 Minn. 513, 117 N. W. 845, 1044 (1908), which involved a proceeding under the forerunner of our present statute to prevent the county auditor of Hennepin County from placing the name of a potential candidate for the legislature on the ballot, we discussed the nature of this statute (105 Minn. 516, 117 N. W. 1045):

"* * * The public interest requires that there should be some speedy method of determining whether candidates for public office are legally entitled to have their names placed on the official ballot, and section 202 [R. L. 1905] is intended to accomplish that purpose."

Even under this statute, proceedings are sometimes commenced too late to enable the court to act. Such was the case of Marsh v. Holm, 238 Minn. 25, 55 N. W. 2d 302 (1952). Moe v. Alsop, 288 Minn. 323, 180 N. W. 2d 255 (1970), involved the eligibility of a candidate for the legislature. There were fact issues involved, so it was necessary to appoint a referee to take and report evidence. While we discussed the limited time afforded the court to decide questions involved, we were in that case

able to dispose of them due to the expeditious manner in which the referee acted.

A review of our cases brought under this statute discloses a variety of questions that have been raised relating to proper preparation of ballots. Clearly, eligibility to hold the office which an individual seeks is one of the questions properly falling within the purview of the statute.

While a proceeding under this statute is directed against the official whose responsibility it is to prepare the ballots, the order to show cause in this case was also served on those whose eligibility was questioned in order that they might appear and be heard.[1] They have been given full opportunity to file briefs and to present their views orally. Daly, Peterson, and Thibodeau did appear and argue orally. Drexler did not appear but has joined in the briefs filed and filed a memorandum of his own. They argue for the most part that § 203.38, subd. 1, is unconstitutional in that it violates due process. We do not agree. In a summary proceeding of this kind, which requires a speedy determination if it is to accomplish its purpose at all, it is difficult to see what more could have been done to afford everyone involved a fair opportunity to be heard.

The qualifications of judges of the supreme court and judges of the district court are found in Minn. Const. art. 6, § 7, which, so far as material, provides:

"Judges of the supreme court, the district court, and the probate court *shall be learned in the law.* The qualifications of all other judges and judicial officers shall be prescribed by law." (Italics supplied.)

The case of State ex rel. Jack v. Schmahl, 125 Minn. 533, 147 N. W. 425 (1914), involved an attempt by a person not an attor-

---

[1] Peterson, Drexler, and Thibodeau were served personally. Service was made upon Daly by mail due to the fact that personal service could not be accomplished, but he has stated orally in court that he raises no issue as to the manner of service and agrees that he has been served.

ney at law to file for the nonpartisan primary election for the office of judge of the district court. In holding that such person was ineligible under the constitutional provision quoted above, we said (125 Minn. 534, 147 N. W. 426):

"* * * Our Constitution (article 6, § 6)[2] provides:

" 'The judges of the supreme and district courts shall be men learned in the law.'

"Beyond question the framers of the Constitution used the last five words quoted in the sense of attorneys at law, and this view has since been uniformly accepted. The few authorities on the subject are to the same effect. See Jamieson v. Wiggin, 12 S. D. 16 [80 N. W. 137 (1899)]; Freiler v. Schuylkill County, 46 Pa. Superior Ct. 58 [1911]. The matter does not merit further discussion."

That definition was followed in State ex rel. Froehlich v. Ries, 168 Minn. 11, 209 N. W. 327 (1926), and State ex rel. Boedigheimer v. Welter, 208 Minn. 338, 293 N. W. 914 (1940). It is controlling as to Charles Thibodeau.

In our constitutional convention debates, an attempt was made to eliminate the qualification that members of the supreme court and the district court be learned in the law. In the report of F. H. Smith of the debates before the Democratic group, Minnesota Constitutional Debates, 1857, p. 513, we find the following:

"MR. BROWN. I move to strike out in the first line of the following Section [the predecessor to art. 6, § 7] the words 'shall be men learned in the law and':

\* \* \* \* \*

"If you are going to give the election of Judges to the people, I do not see why you should trammel the people by specifying what sort of men they are to select for Judges. They certainly should have the right to select such men as they see fit, whether learned in the law or not.

\* \* \* \* \*

---

[2] The pertinent provision prior to the amendment of the Constitution in 1956 was found in art. 6, § 6; it now appears in art. 6, § 7.

"MR. FLANDRAU. * * * I suppose the meaning of the term which the gentleman proposes to strike out is that the candidate shall be a Counsellor or Attorney at Law. If he has been admitted to the bar, that is all which will be required.

"MR. EMMETT. That is the legal construction of the term.

"The amendment was not agreed to."

Prior to the amendment to the Constitution in 1956, the term "learned in the law" applied only to members of the supreme court and the district court. That amendment added members of the probate court. At that time there were a number of judges of the probate court who were laymen. They were permitted to remain in office under a schedule appended to Minn. Const., art. 6, which, so far as relevant, provides:

"(b) All probate judges in office at the time this Article takes effect shall be deemed learned in the law for the purpose of continuance in, and reelection to, any judicial office inferior to the district court."

In an article by Charles B. Howard, who was chairman of the state bar association committee on constitutional revision, we find the following:

"The Supreme Court, district court and probate court judges are required to be learned in the law and the legislature is authorized to set up qualifications for other judicial officers. In the opinion of the sponsors, it is no longer necessary to use untrained people to sit as judges. It is believed that under the general power granted to the legislature to create courts, it will be possible to set up a court system where a sufficient number of qualified persons will be available to decide legal controversies." Howard, *"Proposed Amendment to Article VI of the Constitution Providing for Exercise of Judicial Power of the State,"* 13 Bench and Bar of Minn., Mar. 1956, p. 13, 15.

In State ex rel. Jack v. Schmahl, *supra,* we cited with approval Jamieson v. Wiggin, 12 S. D. 16, 80 N. W. 137, 46 L. R. A. 317, 76 A. S. R. 585 (1899), and Freiler v. Schuylkill County, 46 Pa.

Super. 58 (1911). In Freiler, the Pennsylvania Superior Court, citing Jamieson with approval, stated (46 Pa. Super. 62):

"It has been held that the term 'learned in the law' means that the person is 'either admitted or entitled to be admitted without examination to practice as an attorney at law in the state.' The term 'learned in the law' clearly indicates an intention to prescribe some sort of an educational qualification, and should be given some practical effect; and therefore no one is eligible as a judge who is not, when elected, either admitted or entitled to be admitted, without examination, to practice as an attorney at law. To be learned in the law means that the person must have been ascertained by a competent tribunal prior to his election or appointment * * *."

As far as our research discloses, only two states have held otherwise. Little v. State ex rel. Parsell, 75 Tex. 616, 12 S. W. 965 (1890); Ex parte Craig, 150 Tex. Cr. R. 598, 609, 193 S. W. 2d 178, 185 (1946), reversed on other grounds sub nom. Craig v. Harney, 331 U. S. 367, 67 S. Ct. 1249, 91 L. ed. 1546 (1947); and Heard v. Moore, 154 Tenn. 566, 290 S. W. 15, 50 A. L. R. 1152 (1926); Potter v. Robbins, 155 Tenn. 1, 290 S. W. 396 (1926). See, Annotation, 50 A. L. R. 1156.

The statutes in Tennessee now provide that "[i]n addition to the qualifications provided for judges by article 6, §§ 3 and 4 of the Constitution of Tennessee, judges of the Supreme Court, Court of Appeals, chancery courts, circuit courts, and criminal courts, and courts exercising the jurisdiction imposed in one or more of the last three (3) named courts, shall be learned in the law, which must be evidenced by said judge being authorized to practice law in the courts of Tennessee." Tenn. Code Ann. § 17-119. The constitutionality of this statute was upheld in La-Fever v. Ware, 211 Tenn. 393, 365 S. W. 2d 44 (1963)[3] so that

---

[3] See, Note, 30 Tenn. L. Rev. 640; Overton, *The Judicial System in Tennessee and Potentialities for Reorganization,* 32 Tenn. L. Rev. 501, 514.

at the present time the former opinions in Tennessee can no longer be considered authority for the proposition that a constitutional provision providing that candidates for judicial position must be learned in the law does not mean that they must be admitted to practice law.

Both Texas cases involved the qualifications of a county judge. Texas Constitution, art. 5, § 15, prescribes the legal qualifications of a county judge as one "well informed in the law of the State." In Little v. State ex rel. Parsell, *supra*, the court discussed the nature of the position of county judge and explained the reasons why the constitution did not require such judges to be lawyers. It stated that more than half of such judges in the state elected since the constitution had been adopted had never studied any law. The same was formerly true of our probate judges, but now they must be lawyers, with the exception of those protected when our constitution was amended. The Texas court in Little recognized the constitutional requirements as to qualifications for judges of higher courts, saying (75 Tex. 620, 12 S. W. 967):

"* * * It is apparent that county judges were not required to be lawyers, because that qualification is expressly provided by the Constitution for judges of the higher courts."

Again, in Ex parte Craig, *supra*, the Texas court held that a county judge was not required to be one licensed to practice law in the state under the terms of its constitution quoted above.

It is apparent that these Texas decisions are not authority for the proposition that under our constitutional provision a person learned in the law need not be one who is admitted to practice. As a matter of fact, analysis of the cases mentioned above leads us to conclude that there is no authority so holding.

Other cases following the Minnesota and South Dakota decisions are State ex rel. Chavez v. Evans, 79 N. Mex. 578, 446 P. 2d 445, 39 A. L. R. 3d 290 (1968); Opinion of the Justices, 279 Ala. 38, 181 So. 2d 105 (1965); Howard v. Burns, 14 S. D. 383, 85 N. W. 920 (1901).

The next question involved in this case is whether a person once admitted to practice law and later disbarred is "learned in the law." Here again there is little authority that is of much help. The case of Danforth v. Egan, 23 S. D. 43, 119 N. W. 1021 (1909), dealt with the qualification for the office of state's attorney, who is required to be learned in the law. Appellant Egan had won election to the office in November 1908 but had been disbarred on October 10, 1908. The South Dakota court held he was not qualified to hold the office. While the bulk of the opinion deals with appellant's inability to discharge the duties of the office because he was not qualified to appear in court and with the effect to be given the word "attorney" in the title of the office, the court did conclude that Mr. Egan was disqualified because he was not "learned in the law" unless he was licensed as an attorney when he sought to qualify for the office. Although the South Dakota court's discussion of the term "learned in the law" as applied to our case might be considered dicta, it is a well-reasoned opinion. The court among other things said (23 S. D. 53, 119 N. W. 1025):

"* * * To be learned in the law one certainly must be learned in all those branches of the law which have at all times been recognized as essential in order to qualify one to practice as an attorney, and to be admitted as such. He must not only be versed in the books of law, such as those on contracts, torts, evidence, domestic relation, etc., but it is even more important that he be well based upon those rules of conduct which as a lawyer and practitioner should control his relations with his fellow lawyers, his clients, witnesses, and jurors in court, and the public in general. Knowledge of this branch of the law, commonly known as 'legal ethics,' has long been recognized as the most important qualification for one who is to be entrusted with the sacred duties of an attorney at law, and our present statute recognizes this fact, and makes legal ethics one of the branches to be considered in passing upon the qualification of one seeking admission to practice."

After discussing Jamieson v. Wiggin, *supra,* the court in Danforth concluded with these remarks (23 S. D. 54, 119 N. W. 1025):

"* * * In this case [Jamieson] this court, through Haney, J., say that by the use of this term [learned in the law] the framers of the Constitution held that the class who could hold the office of county judge was confined to persons who, when elected, were either admitted, or entitled to admission, without examination to practice as an attorney at law in this state. This interpretation of these words would exclude appellant from the list of those 'learned in the law' in this state, as he is neither admitted, nor entitled to admission, to practice law; in fact he is expressly forbidden to practice."

The general rule is found in 7 Am. Jur. 2d, Attorneys at Law, § 19, which reads:

"A disbarred attorney can appear in court only under circumstances entitling a layman to appear. His status is the same as that of one who has never been admitted to practice. A like rule applies, during the period of suspension, to one who has been suspended."

In 7 C. J. S., Attorney and Client, § 40, we find much the same statement in the following language:

"* * * Generally, as regards the effect of disbarment the authorities are uniform that it deprives the party disbarred of every privilege to which his license had entitled him * * *."

In In re Integration of the Bar, 5 Wis. 2d 618, 626, 93 N. W. 2d 601, 605 (1958), we find the following statement:

"* * * When a member of the bar is suspended or disbarred it is from the practice of law, not only from appearing in court."

The case of State ex rel. Willis v. Monfort, 93 Wash. 4, 159 P. 889, L. R. A. 1917B, 801 (1916), dealt with the right to hold the office of superior court judge by a person who had been admitted to practice law but had been suspended for one year. The

Washington constitution contained the following provision with respect to eligibility of judges:

"No person shall be eligible to the office of judge of the supreme court, or judge of a superior court, unless he shall have been admitted to practice in the courts of record of this state, or of the Territory of Washington." Wash. Const., art. 4, § 17.

It was contended that a person who had been admitted to practice was eligible to hold the judicial office even though he had been suspended. In rejecting this contention, the Washington court said (93 Wash. 6, 159 P. 890):

"* * * We think it would be absurd to say that this provision of the Constitution means that, when a person has been admitted to practice in the courts of record of this state, and subsequently he has been disbarred for cause or his admission vacated, he is still eligible to the office of superior judge by reason of his original status. The construction of this constitutional provision contended for by the appellant leads to that absurdity. When the Constitution was framed and when it was adopted, it was clearly not the intention of the people in adopting it to authorize a person to be elected judge who was not, at the time of his election, entitled to practice as an attorney in the courts of record in the state. This provision of the Constitution, in our opinion, defines a personal status which must continue, and when the status ceases to continue the person is ineligible. We think no other reasonable construction can be placed upon this provision."

The court, after discussing the case of Brown v. Woods, 2 Okla. 601, 39 P. 473 (1895), said (93 Wash. 7, 159 P. 891):

"* * * We think it is clear that the Constitution meant to say that no person is eligible to the office of judge of the superior court unless he shall have been admitted to practice in the courts of record in this state, which means that he not only shall have been, but that he is, at the time he becomes a candidate or is required to qualify as such judge, entitled to practice in the courts of this state."

There are also other cases which, though not directly in point, lend support to this reasoning. In State ex rel. Anderson v. Stice, 186 Kan. 69, 348 P. 2d 833, certiorari denied, 364 U. S. 823, 81 S. Ct. 59, 5 L. ed. 2d 52 (1960), the defendant, Stice, was disbarred while serving as an elected judge. A Kansas statute required that a "judge shall at the time of election be a qualified voter * * * and admitted to practice law before the supreme court of Kansas, and shall have been a practicing attorney for a period of at least five (5) years prior to said election or appointment." Kansas Stat. Ann. § 20-2001. Stice had met all the requirements of this statute at the time of his election, but the court held that his subsequent disbarment was ground for removal, saying (186 Kan. 73, 348 P. 2d 836):

"* * * The only reasonable conclusion is that every attorney who becomes a judge should continue to possess the right to practice law before the supreme court of Kansas to entitle and qualify him to hold, and to continue in such judicial position."

The same result was reached in State ex rel. Fugina v. Pierce, 191 Wis. 1, 209 N. W. 693 (1926). The Wisconsin court said that the requirement that the judge be an attorney admitted and qualified to practice before a court of record "is a continuing one; that is, it must subsist during the entire term of office." 191 Wis. 3, 209 N. W. 693.

It thus seems clear that a disbarred attorney is no more qualified to hold the office of justice of the supreme court or judge of the district court than any other lay person. By his disbarment he is reduced to the status of a layman. The term "learned in the law," which prescribes the qualifications for these judicial positions, clearly prevents a layman from filing for or holding the office; and it must therefore follow that a disbarred attorney is in no better position to file for the office, or to hold it if he is elected, than any other layman.

It is therefore ordered that the secretary of state and the county auditors of Hennepin and Ramsey Counties, and all those

acting under them, omit from the ballots to be used at the general election to be held on November 7, 1972, the names of Jerome Daly and Gordon C. Peterson as candidates for the office of justice of the supreme court and the names of Charles Thibodeau and William E. Drexler as candidates for the office of judge of district court.

It is further ordered that inasmuch as these filings were improperly accepted, the filing fees of each of the individuals affected should be returned to them.

Associate Justices C. Donald Peterson and Fallon Kelly took no part in the consideration or decision of this case. Substituting for them were Associate Justice William P. Murphy, retired, and Judge Robert Bakke, sitting pursuant to appointment of the court.