STATE OF MINNESOTA

IN SUPREME COURT

A24-1022

Original Jurisdiction                                  Connolly, Acting C.J.


Michelle MacDonald,

                  Petitioner,

vs.                                                    Filed:  October 16, 2024
                                                       Office of Appellate Courts
Steve Simon, Minnesota Secretary of State,

                  Respondent.

_____

Eric Bond Anunobi, Eric Bond Law Office, PLLC, West Saint Paul, Minnesota, for petitioner.

Keith Ellison, Attorney General, Peter J. Farrell, Deputy Solicitor General, Nathan J. Hartshorn, Frank E. Langan, Assistant Attorneys General, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

The Secretary of State does not err in refusing to place on the ballot for judicial office a person whose law license in Minnesota is currently suspended, because an attorney whose license is suspended is not "learned in the law," as Article VI, Section 5 of the Minnesota Constitution requires for judges of the supreme court, the court of appeals, and the district court.

Petition denied.

1

Heard, considered, and decided by FRANCIS J. CONNOLLY, Acting Chief Justice; LESLIE E. BEIERS, JOHN H. GUTHMANN, TIMOTHY J. MCMANUS, and LAURIE J. MILLER, Acting Associate Justices.[1]

O P I N I O N

CONNOLLY, Acting Chief Justice.

Michelle MacDonald—whose law license in Minnesota is currently suspended—filed a petition under Minn. Stat. § 204B.44 (2022), asking this court to: (1) declare that she is "learned in the law" and therefore qualified to be a judge of the supreme court pursuant to Minn. Const. art. VI, § 5; (2) determine that Minn. Stat. § 204B.06, subd. 8 (2022), which requires a judicial candidate to "submit with the affidavit of candidacy proof that the candidate is licensed to practice law in this state" and which defines proof as "providing a copy of a current attorney license," is unconstitutional on its face and as applied; and (3) direct respondent Steve Simon, Minnesota Secretary of State, to allow MacDonald "to appear on the ballot for the 2024 state general election for Associate Justice, Supreme Court 5 opposing Anne McKeig."

Following briefing and oral argument, we issued an order on August 28, 2024, denying the petition. This opinion explains the reasons for our decision. Because MacDonald's law license in Minnesota is currently suspended, she is not "learned in the law" as Article VI, Section 5 of the Minnesota Constitution requires for judges of the supreme court, and thus is not constitutionally qualified to be a judge of the supreme court. As a

---

[1]    Appointed pursuant to Minn. Const. art. VI, § 2, and Minn. Stat. § 2.724, subd. 2 (2022).

2

result, the Secretary of State did not err by excluding MacDonald from the 2024 general election ballot as a candidate for supreme court justice.

## FACTS[2]

MacDonald, a Minnesota resident and registered voter, sought to appear on Minnesota's 2024 general election ballot for Associate Justice – Supreme Court 5.[3] During the candidate filing period for the 2024 election, MacDonald went to the Office of the Minnesota Secretary of State and attempted to file an affidavit of candidacy. Although she stated in her affidavit of candidacy that "I am learned in the law," the printout from the Lawyer Registration Office website she included with her filing indicated that she is "Not Authorized" to practice law and that her current disciplinary status is "SUSPENDED." The Secretary of State's office rejected MacDonald's affidavit of candidacy.

MacDonald has been an attorney at law since 1986 and practiced law in Minnesota from 1986 to 2021. But her law license in Minnesota was suspended in June 2021. *In re MacDonald*, 962 N.W.2d 451, 466, 470 (Minn. 2021) (per curiam) (indefinitely suspending MacDonald with no right to petition for reinstatement for four months for

---

[2] The facts are based on what was alleged in MacDonald's petition under Minn. Stat. § 204B.44. No evidentiary hearing was held; respondent represented that he "does not believe that the material facts of this matter are in dispute."

[3] The only candidate on the 2024 general election ballot for this office is Associate Justice Anne McKeig. To avoid any possible appearance of bias, all members of the court recused, and this case was instead considered and decided by a panel of five acting members, who are "court of appeals and district court judges, all of whom, based upon their term of office and by operation of the mandatory judicial retirement law, Minn. Stat. §§ 490.121, subd. 21d, and 490.125, subd. 1 (2022), will never stand again for judicial election in the State of Minnesota." *MacDonald v. Simon*, No. A24-1022, Order at 2 (Minn. filed July 15, 2024).

making knowingly false statements about the integrity of a judge and failing to obtain a client's written consent to a fee-splitting arrangement). MacDonald remains suspended,[4] and currently she is not authorized to practice law in Minnesota.

MacDonald filed a petition with this court under Minn. Stat. § 204B.44, seeking to correct alleged errors and omissions by having her name placed on the ballot as a judicial candidate.[5] The petition recognized that Article VI, Section 5 of the Minnesota Constitution requires that "[j]udges of the supreme court, the court of appeals, and the district court shall be learned in the law." But MacDonald maintained that being "learned in the law" does not require that the candidate for judicial office be licensed to practice law in Minnesota. MacDonald further claimed that, subject only to the constitutional limitation in Article VI, Section 5, the Minnesota Constitution otherwise recognizes a fundamental right to candidacy for those who, like her, are eligible to vote, are at least 21 years of age, and satisfy a residency requirement. *See* Minn. Const. art. VII, § 6. Finally, MacDonald alleged that Minn. Stat. § 204B.06, subd. 8, which requires proof of eligibility that a judicial candidate is "licensed to practice law in this state"—meaning "a current attorney license"—is unconstitutional both as written and as applied to her.

---

[4]    In December 2021, MacDonald filed a petition for reinstatement to the practice of law, which this court denied. *In re MacDonald*, 994 N.W.2d 547, 549 (Minn. 2023) (per curiam).

[5]    The petition also named as a petitioner Eric Anunobi, an attorney with an active law license who sought to appear on the ballot for a district court judgeship. After the petition was filed, Anunobi and respondent Steve Simon, Minnesota Secretary of State, filed a stipulation for voluntary dismissal, with prejudice, as to all of Anunobi's claims in the petition. Shortly thereafter, Anunobi filed a notice and appeared as MacDonald's attorney in this case.

4

The petition thus sought a declaration that MacDonald is learned in the law and qualifies to be a judge of the supreme court under Article VI, Section 5 of the Minnesota Constitution; a declaration that Minn. Stat. § 204B.06, subd. 8, is unconstitutional as written and as applied; and an order directing the Secretary of State to have MacDonald appear on the ballot for Associate Justice, Supreme Court 5.[6]

Following briefing and oral argument, we issued an order on August 28, 2024, denying the petition, with this opinion to follow.

**ANALYSIS**

A.

MacDonald brought her petition under Minn. Stat. § 204B.44. In the case of an election for state office, a person may file—directly with the supreme court—a petition to correct certain "errors, omissions, or wrongful acts which have occurred or are about to occur." Minn. Stat. § 204B.44(a). Included among those defects is "an error or omission in the placement or printing of the name . . . of any candidate . . . on any official ballot." Minn. Stat. § 204B.44(a)(1). The petitioner has the burden to prove by a preponderance of the evidence that an error, omission, or wrongful act of an election official must be corrected. *Weiler v. Ritchie*, 788 N.W.2d 879, 882–83 (Minn. 2010) (per curiam).

---

[6] Justice Anne McKeig, as the only candidate for this office, was invited to participate but did not appear or otherwise participate in this case.

B.

MacDonald's petition is rooted in the argument that under Article VII, Section 6 of the Minnesota Constitution (Eligibility Clause), which governs general eligibility to hold office, every person who meets the requirements in that section to hold office is eligible to do so, subject only to other constitutional requirements.[7] In other words, she contends that the Legislature cannot impose any greater restrictions or requirements on who may hold office and appear on the ballot. MacDonald takes issue with Minn. Stat. § 204B.06, subd. 8, which states that "[a] candidate for judicial office . . . shall submit with the affidavit of candidacy proof that the candidate is licensed to practice law in this state," and that "[p]roof means providing a copy of a current attorney license." She argues this provision violates the Eligibility Clause by imposing additional requirements that are not found within the Minnesota Constitution.

MacDonald concedes, however, that—consistent with the Eligibility Clause—"the additional constitutional qualifications for the office of Judge set forth in Article VI Judiciary, Section 5, Qualifications, are applicable" to her. That constitutional provision requires the following:

---

[7] Article VII, Section 6 of the Minnesota Constitution provides:

> Every person who by the provisions of this article is entitled to vote at any election and is 21 years of age is eligible for any office elective by the people in the district wherein he has resided 30 days previous to the election, except as otherwise provided in this constitution, or the constitution and law of the United States.

Minn. Const. art. VII, § 6.

> *Judges of the supreme court*, the court of appeals and the district court *shall be learned in the law*. The qualifications of all other judges and judicial officers shall be prescribed by law. The compensation of all judges shall be prescribed by the legislature and shall not be diminished during their term of office.

Minn. Const. art. VI, § 5 (emphasis added).[8]

Accordingly, there is a threshold issue before us: whether MacDonald is "learned in the law" and thus qualified to be a judge of the supreme court under Article VI, Section 5 of the Minnesota Constitution. If MacDonald cannot satisfy what she herself concedes to be the constitutional requirement for eligibility to be a judge of the supreme court, there is no need to reach her argument that the requirements in Minn. Stat. § 204B.06, subd. 8, unconstitutionally impose greater requirements than those within the Minnesota Constitution. And MacDonald concedes that at present, "[h]er Minnesota law license is suspended." Thus, the threshold—and here dispositive—question is whether an attorney whose Minnesota law license is suspended is "learned in the law" as that term is used in the Minnesota Constitution.

---

[8]     This constitutional requirement that judges of the supreme court be "learned in the law" is mirrored in Minn. Stat. § 204B.06, subd. 4a(2) (2022), which provides:

> Candidates who seek nomination for the following offices shall state the following additional information on the affidavit:
> . . . .
> (2) *for supreme court justice*, court of appeals judge, or district court judge, *that the candidate is learned in the law* and will not turn 70 years of age before the first Monday in January of the following year . . . .

Minn. Stat. § 204B.06, subd. 4a(2) (2022) (emphasis added.)

C.

1.

MacDonald argues that the phrase "learned in the law," as used in Article VI, Section 5 of the Minnesota Constitution, means being an attorney at law. As support, she cites *State ex rel. Boedigheimer v. Welter*, 293 N.W. 914 (Minn. 1940). MacDonald's reliance on *Boedigheimer* is misplaced.

*Boedigheimer* is distinct from this case because it concerned the eligibility requirements to be a "*municipal judge*." *Boedigheimer*, 293 N.W. at 914 (emphasis added). The relevant statute creating the municipal court that was at issue in *Boedigheimer* included the requirement that "[t]he Judge of the Municipal Court shall be . . . a person learned in the law and duly admitted to practice as an attorney in this State." *Id.* (quoting Minn. Gen. Stat. ch. 5, § 3 (1923)). The "only question" presented in *Boedigheimer* was the constitutionality of this requirement in the statute. *Id.*

*Boedigheimer* began its analysis by recognizing, as MacDonald now highlights, that this court had construed the phrase "learned in the law" as "mean[ing] 'attorneys at law.' " *Id.* (citing *State ex rel. Jack v. Schmahl*, 147 N.W. 425, 426 (Minn. 1914) (per curiam)). This court also drew attention to the two related constitutional provisions at issue here, that "[t]he judges of the *supreme and district courts* shall be men learned in the law," as well as the general Eligibility Clause.[9] 293 N.W. at 914–15 (emphasis added) (citation omitted)

---

[9] Importantly, at the time *Boedigheimer* was decided, the Minnesota Constitution did not contain the provision in the current constitution that "[t]he qualifications of all other judges and judicial officers shall be prescribed by law." Minn. Const. art. VI, § 5.

8

(internal quotation marks omitted). This court then looked to its prior decision in *State ex rel. Froehlich v. Ries*, 209 N.W. 327 (Minn. 1926), as "dispos[ing] of the question involved" and "controlling." *Boedigheimer*, 293 N.W. at 915. In *Froehlich*, this court held that a statute requiring that court commissioners be "learned in the law" was unconstitutional. 209 N.W. at 328. This court in *Boedigheimer* observed that even though court commissioners could "exercise the judicial powers of a judge of the district court," the Legislature "cannot impose greater restrictions or exact other qualifications for eligibility to constitutional offices than are prescribed in the Constitution." 293 N.W. at 915. Thus, *Boedigheimer* affirmed that "[w]hile it is important that judges of all courts of record be persons 'learned in the law,' we are nevertheless without power to increase the qualifications prescribed by the Constitution." *Id.*

Despite holding that it was unconstitutional for the Legislature to require a *municipal judge* to have a Minnesota law license, *Boedigheimer* did not determine, as MacDonald argues, what the phrase "learned in the law," as used in the Minnesota Constitution, means. *Boedigheimer* only ruled that the constitutional requirement to be "learned in the law" did not apply to municipal judges.

Nor does *Boedigheimer* answer the question as to whether "learned in the law" meant something distinct from the statutory requirement of being "duly admitted to practice as an attorney in the State." *Boedigheimer* held that this entire requirement contained within the statute at issue for municipal judges was unconstitutional. And while *Boedigheimer* explained that the court had previously construed persons "learned in the law" to mean "attorneys at law," *Boedigheimer* did not answer whether either phrase meant

9

only attorneys licensed to practice law in the State of Minnesota. The case *Boedigheimer* relied upon in this regard was *Schmahl*, which only had to determine whether "a layman" was "learned in the law." *Schmahl*, 147 N.W. at 426. In *Schmahl*, that the phrase "learned in the law" was used "in the sense of attorneys at law" was so "[b]eyond question" and dispositive of the issue in that case that the "[t]he matter d[id] not merit further discussion." *Id.* In other words, neither in *Schmahl* nor in *Boedigheimer* was there any need for this court to address whether being "learned in the law" meant being an *actively licensed* attorney at law in the State of Minnesota.

2.

The question of what is meant by the requirement in the Minnesota Constitution that a judge be "learned in the law" is instead controlled by *In re Daly*, 200 N.W.2d 913 (Minn. 1972) (per curiam).[10] In *Daly*, four individuals filed the equivalent of a section 204B.44 petition seeking to have their names appear on the ballot as candidates for the supreme court or district court. *Id.* at 914. Three of the individuals were "admitted to practice law in this state" and later "disbarred." *Id.* The fourth, Charles Thibodeau, had "never been admitted to practice law in this state." *Id.* At issue was the four individuals' eligibility to hold the judicial office being sought. *See id.* at 914–15.

This court recognized that in *Schmahl*—and then followed by *Froehlich* and *Boedigheimer*—the constitutional requirement that judges be "learned in the law" required

---

[10]     Tellingly, while the Secretary of State appropriately recognized *Daly* as "the leading case," MacDonald, for her part, never cited to or addressed *Daly* in her petition, brief, or any other filings.

10

that they be attorneys at law. *Daly*, 200 N.W.2d at 916. *Daly* acknowledged that this definition was "controlling as to Charles Thibodeau," who had never been admitted to practice in the state. *Id.* But contrary to MacDonald's argument that the definition of "learned in the law" in those cases is both the starting and ending place for the analysis of whether she is "learned in the law," *Daly* recognized that further analysis was required for someone who has been admitted to practice law and then subject to attorney discipline.

*Daly* first credited the constitutional convention debates where it was voiced that "the legal construction of the term" "learned in the law" required that the person "has been admitted to the bar." *Id.* at 917 (citation omitted). *Daly* then turned to the heart of the question in that case: "whether a person once admitted to practice law and later disbarred is 'learned in the law.'" *Id.* at 918. This court answered this question in the negative after canvassing other authorities. It concluded:

> It thus seems clear that a disbarred attorney is no more qualified to hold the office of justice of the supreme court or judge of the district court than any other lay person. By his disbarment he is reduced to the status of a layman. The term "learned in the law," which prescribes the qualifications for these judicial positions, clearly prevents a layman from filing for or holding the office; and it must therefore follow that a disbarred attorney is in no better position to file for the office, or to hold it if he is elected, than any other layman.

*Id.* at 920.

Significantly, the authorities relied upon in reaching this holding applied the same rule to *suspended* attorneys as to disbarred attorneys. *Daly* quoted favorably to the *American Jurisprudence* treatise for the principle that "[a] disbarred attorney can appear in court only under circumstances entitling a layman to appear," and which also highlighted

11

that "[a] like rule applies, during the period of suspension, to one who has been suspended." *Daly*, 200 N.W.2d at 919 (quoting 7 Am. Jur. 2d, *Attorneys at Law* § 19). *Daly* likewise quoted a Wisconsin opinion for the principle that "[w]hen a member of the Bar is *suspended or disbarred* it is from the practice of law, not only from appearing in court." *Id.* (emphasis added) (quoting *In re Integration of the Bar*, 93 N.W.2d 601, 605 (Wis. 1958) (per curiam)). And *Daly* followed the reasoning of the Washington Supreme Court, which rejected the contention "that a person who had been admitted to practice was eligible to hold the judicial office even though he had been suspended." *Id.* at 919–20 (summarizing *State ex rel. Willis v. Monfort*, 159 P. 889, 890 (Wash. 1916)).

Given this court's reliance in *Daly* upon authorities treating both suspended and disbarred attorneys as effectively being laypersons, and the distinction drawn in *Daly* that those who are laypersons are not "learned in the law," *Daly* is both on point and controlling. Just like a disbarred lawyer, a suspended lawyer is not authorized to practice law in Minnesota. *In re Mollin*, 940 N.W.2d 470, 473 (Minn. 2020) (per curiam) ("A lawyer cannot practice law when he is not authorized to do so (for instance, if he is suspended).").

Furthermore, subsequent decisions by this court have characterized the holding of *Daly* in a manner precluding suspended attorneys from being eligible to serve as judges.[11] In *Sylvestre v. State*—a case concerning judicial retirements—the constitutional

___

[11] This court also reaffirmed that *Daly* "was clearly right as a matter of law and fact" in *Peterson v. Knutson*, 233 N.W.2d 716, 720–21 (Minn. 1975). The posture of that case was unique—one of the parties in *Daly* brought an action against those members of the court who had heard and decided *Daly*. *Peterson*, 233 N.W.2d at 717. But *Peterson* squarely reaffirmed *Daly*, with reliance again upon other jurisdictions that reached the same result as to suspended attorneys. *Peterson*, 233 N.W.2d at 722.

12

requirement that judges be "learned in the law" was referenced, and citing *Daly*, it was explained that the "term means that in order to hold a judicial position a person must be admitted to practice law *and in good standing*." 214 N.W.2d 658, 663 (Minn. 1973) (emphasis added). Similarly, in *In re Scarrella*, this court—in again holding that individuals not admitted or entitled to practice law in the State must be omitted from the ballots for judicial office—further advised that "[a]mendment of the form of affidavit to be subscribed by persons seeking judicial office, specifying that to be 'learned in the law' is to be *admitted to practice* in the courts of the State of Minnesota as a lawyer, should make resort to the courts in cases so clearly controlled by precedent as this one unnecessary." 221 N.W.2d 562, 563 (Minn. 1974) (per curiam) (emphasis added).

We find *Daly* and its progeny controlling as to the question here. Those cases dictate that to be qualified under Article VI, Section 5 of the Minnesota Constitution to serve as a judge of the supreme court, court of appeals, or district court, a person must be admitted to practice law and not be suspended or disbarred. Because MacDonald is currently suspended from practicing law in Minnesota, she is constitutionally ineligible to serve as a supreme court justice. Accordingly, there was no error or omission by the Secretary of State in excluding MacDonald from that ballot, and her petition fails.

**CONCLUSION**

For the foregoing reasons, we deny the petition.

Petition denied.

13